W. Willard WIRTZ, Secretary of Labor, United States Department of Labor

v.

LOCAL 191, INTERNATIONAL BROTH-ERHOOD OF TEAMSTERS, CHAUF-FEURS, WAREHOUSEMEN AND HELPERS OF AMERICA.

Civ. A. No. 9778.

United States District Court
D. Connecticut.

June 26, 1963.

Irving H. Perlmutter, Asst. U. S. Atty., Hartford, Conn., James R. Beaird, Asso-

ciate Sol., Department of Labor, Washington, D. C., for plaintiff.

Norman Zolot, Hamden, Conn., for defendant.

BLUMENFELD, District Judge.

This petition was brought to compel the respondent, a Local of the Teamster's Union, to comply with a subpoena duces tecum issued by the Secretary of Labor for documents and writings relating to an investigation to determine whether any persons have violated any provision (except Title I or amendments made by the Act to other statutes) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. §§ 401 et seq.

The subject matter of the documents requested relates to the nomination and election of officers of the Local during the last months of 1962. The respondent points out that the Secretary's investigation began after a complaint by George Kyer, based upon a ruling of the Local that he was ineligible to stand for election to office. Two other members of the Local had unsuccessfully sought a temporary injunction to restrain the holding of the election (Civil No. 9557), and the Secretary of Labor has also filed a complaint against the respondent in this court in Civil No. 9776, alleging the existence of probable cause that § 401 was violated by the Local's ruling.

The nine sub-sections of § 401 relate to union elections. Section 402 relates to remedies for election violations. This brings us to the heart of the respondent's contention that since § 402(a) requires a complaint by a member of a Local union to the Secretary of Labor as a necessary step to be taken before the Secretary may begin an action for a judicial remedy in this court to set aside an invalid election, all duties and powers which the Secretary is entitled to employ in aid of the enforcement of that remedy must be found only in § 402 and subject to the limitations therein. The respondent then contends that Kyer's complaint to the Secretary was prematurely filed because he had not complied with the provisions of § 402(a) (1) which required him to exhaust internal remedies within the union, nor had he been excused from doing so on the ground that he had not obtained a final decision within three months after he invoked them as provided by § 402(a) (2).

While it may be true that Kyer had not complied with § 402(a) (1) requiring him to exhaust internal remedies, or been excused from doing so by § 402(a) (2) because of the parent body's failure to render a final decision within three months after he had first sought to obtain it there, what effect that might have in Civil No. 9776 is not before me. The question before me is, must it be shown that the conditions precedent to the filing of a complaint with the Secretary have been fulfilled in order to permit an investigation by the Secretary and his use of the subpoena power to implement that investigation?

The present petition alleges, "The Secretary, believing it necessary to determine whether any persons have violated any provision of the Act (except Title I or amendments made by the Act to other statutes), sought through his duly authorized representatives to make an investigation of respondent pursuant to Sections 402 and 601(a) of the Act." Under the separate Title VI of the Act, § 601(a) and (b) (29 U.S.C. § 521) provides:

"(a) The Secretary shall have power when he believes it necessary in order to determine whether any person has violated or is about to violate any provision of this Act (except title I or amendments made by this Act to other statutes) to make an investigation and in connection therewith he may enter such places and inspect such records and accounts and question such persons as he may deem necessary to enable him to determine the facts relative thereto. The Secretary may report to interested persons or officials concerning the facts required to be shown in any report required by this Act and concerning the reasons for failure or refusal to file such a re-

port or any other matter which he deems to be appropriate as a result of such an investigation.

"(b) For the purpose of any investigation provided for in this Act, the provisions of sections 9 and 10 (relating to the attendance of witnesses and the production of books, papers, and documents) of the Federal Trade Commission Act of September 16, 1914, as amended (15 U.S.C. 49, 50), are hereby made applicable to the jurisdiction, powers, and duties of the Secretary or any officers designated by him."

■■ This broad investigatory power was granted to the Secretary of Labor by § 601 to "provide the means of discovery whereby the Secretary could determine whether the Act was being violated, or about to be violated." Goldberg v. Truck Drivers Local Union 299, 293 F.2d 807 (6 Cir. 1961), cert. denied 368 U.S. 938, 82 S.Ct. 379, 7 L.Ed.2d 337.

His employment of this power does not depend upon the existence of reasonable cause. Goldberg v. Truck Drivers Local Union 299, supra; International Brotherhood of Teamsters, etc. v. Goldberg, 303 F.2d 402 (D.C.Cir. 1962), cert. denied 370 U.S. 938, 82 S.Ct. 1589, 8 L. Ed.2d 808; Goldberg v. Sewell Mfg. Co., 210 F.Supp. 293 (N.D.Ga.1962). It does not depend on whether a complaint is filed with him; and, if a complaint has been filed, it does not depend on whether the complainant has met (a) and (b) of § 402. If Kyer has not so complied, the Secretary may not be subject to the mandate in § 402(b) that he "shall investigate such complaint" and "shall, within 60 days" of the complaint to him, bring suit in this court "to set aside the invalid election, * * *."

■ But, there is far more at stake in protecting democratic election procedures for all members than the right of any single member to stand for election to office. There is nothing ambiguous about the legislative policy in the Labor-Management Reporting and Disclosure Act to advance union democracy. Section 401 safeguards voting rights, election procedures, secret ballots, and limitations of terms of office. Likewise, it is clear from legislative history that Congress recognized that since the public interest in safeguarding and improving the electoral process exceeds even that of the members, it might be unwise to place too much reliance on the members to vindicate that interest. See generally Cox, The Role of Law in Preserving Union Democracy, 72 Harv.L.Rev. 609, 610.

While § 402 sets up a statutory scheme to challenge union elections and creates jurisdiction in the federal district courts to entertain such suits brought against the union as a jural entity despite the absence of diversity or amount in controversy, even though it is the exclusive remedy for *challenging* an election, see § 403, it does not require the implication that the Secretary of Labor may not otherwise conduct an *investigation.* Jurisdiction over an election suit in this court automatically carries with it the pre-trial discovery provisions including Rule 34 of the Federal Rules of Civil Procedure.

Much would have to be added to the language of § 402 in order to read it as carving out an exception from the broad power, including the use of subpoena, given to the Secretary by § 601 to *investigate* election violations where no complaint is filed by a union member.[1] There is no such limitation in § 601 itself.

Even if the union should be able to withstand the suit on grounds of failure to exhaust internal remedies, Harris v. International Longshoremen's Ass'n,

1. Perhaps one word about the legislative history. Far from revealing any intent to impose such a limitation upon the Secretary's § 601 authority as the respondent here contends for, the legislative history discloses congressional intention to grant the Secretary the most sweeping investigatory powers. See 2 U.S. Code Congressional and Administrative News 86th Congress First Session (1959) pp. 2319, 2351, 2404, 2449, 2508.

Local No. 1291, 205 F.Supp. 45 (E.D.Pa. 1962); Smith v. General Truck Drivers, etc., Union Local 467, 181 F.Supp. 14 (S. D.Cal.1960); See Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2 Cir.1961), cert. denied 366 U.S. 929, 81 S.Ct. 1650, 6 L.Ed.2d 388, nonetheless, disclosure of what may have been an election impropriety is in the public interest as contemplated by the Act, see § 601 (second sentence); see generally Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv.L.Rev. 851, and indeed may better enable the members of the union to utilize the rights guaranteed them in the Act through intra union procedures.

In Wirtz v. Local 560, (D.N.J. April 18, 1963) (report of the hearing and oral decision), Judge Meany's illuminating colloquy with counsel for both sides fully explored the relationship between § 402 and § 601 of the Act, and his decision concluded that the Secretary's plenary investigatory authority is not conditioned upon compliance with the scheme set out in § 402 for challenging elections. I am of the same opinion.

With respect to item **7** of the subpoena which calls for the production of "all ballots cast, used or unused, voided or challenged", respondent states that it cannot comply because there were no tape records produced by the voting machines used. Production of the union official who supervised the election and/or who read the totals as shown on the voting machine and the teller's tabulation of the votes cast in the election will satisfy that portion of the subpoena and this order enforcing it. Of course, to the extent that there are records of challenged members who were not permitted to vote, the union is directed to comply by producing them.

Finally, the respondent urges that the "membership lists" sought by the subpoena be retained by the Secretary in his confidence and not turned over to "interested parties." While there is nothing in the record to indicate that the Secretary intends to publish these lists, and no reason to suspect that he will do so, in view of the express congressional policy against making these lists public, see International Brotherhood of Teamsters, etc. v. Goldberg, supra, the court will grant a protective order forbidding the use of the information in the membership lists for any purpose other than what is authorized by law, and specifically forbid any publication or public disclosure of them without further order of this court.

Subject only to the foregoing limitations, the respondent is ordered to comply with the subpoena.