**Richard CONLEY, Sam Lonigro, and George Lack, individually and on behalf of others similarly situated, Plaintiffs,**

v.

**Saverio AIELLO, Individually and as President of Local 814, International Brotherhood of Teamsters, Defendant.**

**No. 67 Civ. 4635.**

United States District Court
S. D. New York.

Dec. 4, 1967.

---

Harry R. Pollak, New York City, for plaintiffs.

Cohen & Weiss, New York City, for defendant. Bruce H. Simon and Robert S. Savelson, New York City, of counsel.

MANSFIELD, District Judge.

Plaintiffs were nominated on November 5, 1967 as candidates for office in Local 814, International Brotherhood of Teamsters (hereinafter the "Union"), which has scheduled the election for December 10, 1967. Defendant Aiello, President of the Union, has refused to permit plaintiffs to copy the Union membership list in preparation for the election, although he has offered to allow inspection of the list; and has also refused to certify plaintiffs Lack and Lonigro as candidates on the ground that they are ineligible, not having promptly paid their Union dues throughout the two years prior to nomination as required by the Union constitution. The three named plaintiffs, individually and on behalf of other nominees on the "Conley slate", move pursuant to § 401(c) of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 481(c), 73 Stat. 532 for an injunction empowering them to copy the Union membership list, and also pursuant to § 401(e), for an injunction compelling Aiello to certify Lack and Lonigro as candidates and place their names on the ballot.

Plaintiffs argue that while § 401 (c) only grants the right "to inspect" a membership list, Congress must have intended by this provision to create a "right of access" which would include the right to copy in cases such as this where the large number of members makes the mere right of inspection of the list of little practical significance. Upon oral argument plaintiffs' counsel, for instance, said that the list was needed to mail out campaign literature to the pro-

spective voters. Defendant's counsel replied that defendant would arrange to have the envelopes addressed and mailed at plaintiffs' expense.

The legislative history of § 401(c) reveals that Congress, in using the word "inspect," did not intend it to mean "copy," since a proposal providing for a right to copy membership lists was deleted in a Senate-House conference in favor of the right carefully circumscribed in § 401(c) once within 30 days to "inspect" a list of members who are employed under union security contracts. See Conference Report No. 1147 on S. 1555, Statement of the Managers on the Part of the House, p. 7, U.S.Code Cong. & Admin.News, 1959, p. 2503. This was viewed as a proper balance between the desirability of permitting the lists to be copied in the interest of fully democratic elections and the danger that the lists so copied would be used for improper purposes by employers, rival unions, subversive organizations, and the like. See A. Cox & D. Bok, Cases and Materials on Labor Law, 1050–51 (6th ed. 1965). Thus, from both the text and legislative history it is clear that § 401(c) was not intended to create a right to copy union membership lists.* See, International Brotherhood of Teamsters, Chauffeurs, etc., v. Goldberg, 112 U.S.App.D.C. 391, 303 F.2d 402, cert. denied, 370 U.S. 938, 82 S.Ct. 1589, 8 L.Ed.2d 808 (1962); Wirtz v. American Guild of Variety Artists, 267 F.Supp. 527 (S.D.N.Y.1967); Wirtz v. Local 191 International Brotherhood of Teamsters, 218 F.Supp. 885 (D.Conn.), affd., 321 F.2d 445 (2d Cir. 1963); and 29 C.F.R. § 452.9(b) (1965).

■ Plaintiffs' moving papers suggest that regardless of whether the second sentence of § 401(c) creates an unconditional right to copy membership lists, plaintiffs have a right to copy such lists because their opponents in the election are incumbents to whom the lists are "obviously" available at all times. The first sentence of § 401(c) places unions under a duty enforceable in the district courts to refrain from discrimination with respect to membership lists. However, although there is an ambiguous suggestion in the legislative history that discrimination with respect to the lists is always present when an incumbent seeks re-election, see Leg.Hist. of the LMRDA of 1959, pp. 799–801, the Court does not believe that Congress intended that any candidate running against an incumbent would have an automatic right to a copy of the membership lists. To so hold would make a mockery of the limitations, discussed above, which Congress so deliberately placed on the right of access to membership lists. Therefore, in the absence of any proof that the incumbents have made a copy of the lists for themselves, see Wirtz v. American Guild of Variety Artists, supra, or that they are actually making some use of the lists in a re-election campaign, plaintiffs' claim of discrimination must be rejected.

■ Plaintiffs' request for an injunction pursuant to § 401(e) compelling certification of Lonigro and Lack as candidates in the forthcoming election must be denied for lack of jurisdiction, in view of the recent Supreme Court decision in Calhoon v. Harvey, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190 rehearing denied, 379 U.S. 984, 85 S.Ct. 639, 13 L.Ed.2d 577 (1964), where the Court said that disputes basically relating

"to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title." (379 U.S. at 141, 85 S.Ct. at 296.)

---

* Since the Court rejects plaintiffs' contention that the right to inspect in § 401(c) includes the right to copy regardless of whether the union discriminates with respect to the use of membership lists, the Court does not decide whether the first sentence of § 401(c), which grants jurisdiction to the district courts with respect to discrimination in access to such lists and distribution of campaign literature, also grants jurisdiction with respect to the unconditional though limited right to inspect created by the second sentence of § 401(c).

Those procedures, as set forth in § 402 (c), permit individual members, after exhausting internal union remedies, to file a complaint with the Secretary of Labor who, if he finds probable cause to believe that Title IV has been violated, may file suit in the appropriate district court. In Calhoon v. Harvey, supra, the Court held that a member could not by-pass these exclusive procedures by invoking the jurisdiction of the district courts under § 102 of Title I.

Plaintiffs maintain that Lonigro and Lack are entitled to be certified as candidates, despite their failure to pay dues promptly as required by the Union constitution, because the tardiness of the payments was excusable in that it resulted from the hospitalization of Lack, which prevented him from carrying out his duty as shop steward to obtain the necessary monthly signatures authorizing the "check-off" of the dues by his and Lonigro's employer. Section 401(e) provides:

> "No member whose dues have been withheld by his employer for payment to such organization pursuant to his voluntary authorization provided for in a collective bargaining agreement shall be declared ineligible to vote or be a candidate for office in such organization by reason of alleged delay or default in the payment of dues."

Defendant disputes that the dues were subject to "check-off."

While it appears that the failure to certify Lack and Lonigro as candidates may well be a violation of § 401(e), particularly if their dues were subject to "check-off" as alleged, this Court has no jurisdiction over an action by union members to compel certification. The proper procedure for plaintiffs to follow is to apply to the Secretary of Labor after exhausting internal union remedies as provided in § 402. Calhoon v. Harvey,

supra; Wirtz v. Locals 410, 410A, 410B & 410C, Intl. U. of Op. Eng., 366 F.2d 438 (2d Cir. 1966). See also Wirtz v. Local 153, Glass Bottle Blowers Assn., 372 F.2d 86 (3d Cir. 1966), cert. granted, 387 U.S. 904, 87 S.Ct. 1686, 18 L.Ed.2d 621 (1967); Wirtz v. Locals 545-A, 545-B & 545-C, Intl. U. of Op. Eng., 366 F.2d 435 (2d Cir. 1966); Stein v. Wirtz, 366 F.2d 188 (10th Cir. 1966), cert. denied, 386 U.S. 996, 87 S.Ct. 1316, 18 L.Ed. 2d 344 (1967); Wirtz v. Locals 9, 9-A & 9-B, Intl. U. of Op. Eng., 51 CCH Lab. Cases ¶ 19,579 (D.C.Colo.1965); Wirtz v. Local 191, International Brotherhood of Teamsters etc., 226 F.Supp. 179 (D. Conn.1964). Since plaintiffs' version of the circumstances of the delay in payment of their dues, if upheld in such a proceeding, could result in nullification of the proposed election, defendant may be well advised to consider a reasonable postponement of the election to permit all of the proof on the issue to be put before the General President of the International, or to permit a reconsideration of the question of certification by the Supervisor of Nominations and Elections in the light of § 401(e), in the interest not only of fairness but avoiding protracted proceedings. However, this suggestion is not meant to imply that the Court has power to assume any jurisdiction over the matter.

█ *Plaintiffs' motion must be denied* except that plaintiffs or their representatives may have access to the membership list at the Union's offices where they shall be permitted to use it for addressing of envelopes to members, which shall be mailed jointly by representatives of both parties. The foregoing shall constitute the findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P.

So ordered.